```
            UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF LOUISIANA
```

U.S. *EX REL.* T&C DIRTWORKS, INC.                CIVIL ACTION

VERSUS                                             NO. 10-985

L&S-CKY JV AND INSURANCE COMPANY                   SECTION: B(3)
OF THE STATE OF PENNSYLVANIA

### ORDER AND REASONS

Before the Court is Defendant's Motion for Summary Judgment (Rec. Doc. No. 20) and Plaintiff's opposition thereto (Rec. Doc. No. 24). Also submitted for the Court's consideration is Plaintiff's Motion for Reconsideration (Rec. Doc. No. 45) of Defendant's Motion for Partial Summary Judgment (Rec. Doc. No. 40). For the following reasons,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Rec. Doc. No. 20) is **GRANTED** with regards to Defendant's claim of overpayment and **DENIED** as to Defendant's claim that Plaintiff's claims are barred by the Subcontract.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Reconsideration (Rec. Doc. No. 45) is **GRANTED** with costs and reasonable attorney's fees assessed against Plaintiff pursuant to this Court's Order of December 16, 2010 (*see* Rec. Doc. No. 44) and that Defendant's Motion for Partial Summary Judgment (Rec. Doc. No. 40) is **GRANTED**.

Defendant, L&S-CKY JV ("L&S") entered into Prime Contract, W912P8-08-D-0046, CTO 0003 ("Prime Contract") with the U.S. Army Corp of Engineers to complete levee restoration. Subsequently, on or about March 2, 2009, CKY entered into Subcontract, LS02-02 ("Subcontract") with T&C Dirtworks, Inc. ("T&C") which provided that T&C would be responsible for delivering soils to the levee site in accordance with plans and specifications of the Subcontract and the incorporated Prime Contract. (Rec. Doc. No. 20-1). The parties subsequently agreed that T&C would receive $6.50 per cubic yard of soil removed from the borrow site. (Rec. Doc. No. 20-1). The Subcontract stated that cubic yards would be measured by quantity taken before and after excavation of soils in the borrow site. (Rec. Doc. No. 20-1).

Defendant argues in its Motion for Summary Judgment (Rec. Doc. No. 20) that Plaintiff was allegedly overpaid for the work performed under the Subcontract. Accordingly, Defendant seeks return of those sums paid above what Plaintiff should have received for the work performed. Furthermore, Defendant asserts that the Subcontract bars all of T&C's claims for amounts allegedly due for work performed under the Subcontract.

Defendant argues that T&C has no cause of action for *quantum meruit* since there existed a valid subcontract between the parties. (Rec. Doc. No. 40-1) Defendant asserts that under Louisiana law, *quantum meruit* is only available in the absence of a specific

contract and contends that since the measure of compensation of price is stated in the contract, T&C has failed to state a cause of action based on *quantum meruit*.  (Rec. Doc. No. 40-1).

Additionally, Defendant argues that T&C has no cause of action for unjust enrichment due to Plaintiff's failure to demonstrate that there is no other remedy at law available to offer relief. (Rec. Doc. No. 40-1).  Defendant asserts that Plaintiff's remedy is one for breach of contract and the availability of such action precludes Plaintiff from asserting a claim for unjust enrichment. (Rec. Doc. No. 40-1).

Plaintiff contends that the waiver provision contained within the Subcontract is not clear and express as to what constitutes a valid waiver of Plaintiff's right to file a claim for work performed more than thirty days from the completion of the Subcontractor's scope of work.  (Rec. Doc. No. 24).  Furthermore, Plaintiff alleges that there exists genuine issues of fact regarding the amount of soil removed under the Subcontract that precludes a grant of summary judgment.  (Rec. Doc. No. 24). Additionally, Plaintiff requests that the Court allow for additional discovery before ruling on Defendant's Motion for Summary Judgment.

Plaintiff argues that due to L&S's failure to perform specific operations and obligations contained in the subcontract, Plaintiff assumed additional costs.  (Rec. Doc. No. 45-2).  Plaintiff

3

contends that additional costs which could include delay damages, additional hauling costs, additional overhead and supervision, etc. are not included in the subcontract and therefore represent costs that are "unstated in the contract." Accordingly, Plaintiff argues that *quantum meruit* and unjust enrichment claims have been adequately alternatively pleaded and Defendant's Motion for Partial Summary Judgment on those claims should be denied.

Summary judgment is proper if the pleadings, depositions, interrogatory answers and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 2554-55 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the non-moving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Associates of North Texas,* 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id.* Accordingly,

4

conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.* 7 F.3d 1203, 1207 (5th Cir. 1993). If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial. *Matsuhita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S. Ct. 1348 at 1356-57 (1986).

I.  **Defendant's Motion for Summary Judgment on L&S's Overpayment Counterclaim**

   A.  **Preclusion of T&C's Claims Under the Miller Act**

   The Miller Act is intended, in part, to protect the rights of a subcontractor on a government contract and should be liberally construed to accomplish this purpose. *Warrior Constructors, Inc. v. Harders, Inc.*, 387 F.2d 727, 729 (5 Cir. 1967); *U.S. f/u/b/o Trans Coastal Roofing Co., Inc. v. David Boland, Inc.* 922 F.Supp. 597, 598 (S.D. Fla. 1996); 40 U.S.C. § 3131, *et seq.* "If [a] subcontractor is not paid, his only remedy is a suit under the Miller Act." *U.S. f/u/b/o B's Company v. Cleveland Electric Co. of S.C.*, 373 F.2d 585, 588 (5 Cir. 1967). A subcontractor's right to sue may be waived by clear and express provisions in the contract between the prime contractor and subcontractor. *Id.* Accordingly, in the absence of a clear expression, "the contention that there has been a waiver or release of that right must fail." *Warrior Constructors, Inc.*, 387 F.2d at 729. Under 40 U.S.C. § 3133, a

subcontractor furnishing labor or material under a contract for which a payment bond is furnished must bring an action "no later than one year after the day on which the last of the labor was performed...by the person bringing the action." § 3133(b)(4).

Defendant asserts that Plaintiff is precluded from bringing suit because such claims are time barred by Section D.11 of the Subcontract.  The provision states:

> CLAIMS - SUBCONTRACTOR agrees that no claim against Prime Contractor regarding work performed under the terms of this Agreement shall be considered valid if filed more that 30 days following completion of Subcontractor's Scope of Work.

(Rec. Doc. No. 10-2).  Section D.11 refers to the validity of a "claim" being "filed" but does not specifically address the meaning of those terms as they pertain to the Subcontract.  The provision does not set forth whether a claim is filed when notice of a claim is given to Defendant by Plaintiff or whether a complaint must be filed within the stipulated time in order to be considered valid. Moreover, the Prime contract does not include any waiver provision as to claims by a subcontractor against the contractor.  The ambiguity of these terms in the Subcontract do not exhibit a clear and express provision by which Plaintiff's rights were waived.  As such, Plaintiff's claims are not untimely.

    **B.   Survey and Computation of Work Performed Under the Subcontract**

In Louisiana, the interpretation of contracts is governed by

Louisiana Civil Code articles 2045 through 2057. Contracts must be construed in such a way as to lead to logical conclusions and to give effect to the obvious intent of the parties. *Lambert v. Maryland Cas. Co.*, 418 So.2d 553, 559 (La. 1982). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. Additionally, "[a] provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective." La. Civ. Code art. 2049. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. Civ. Code art. 2050. "A cardinal rule in the construction of contracts is that the contract must be viewed as a whole and, if possible, practical effect given to all its parts, according to each the sense that results from the entire agreement so as to avoid neutralizing or ignoring any of them or treating them as surplusage." *Lambert*, 418 So.2d at 559. "The determination of whether a contract is clear or ambiguous is a question of law." *Edwards v. Daugherty*, 03-2103, p. 12-13 (La. 10/1/04); 883 So.2d 932, 941. Furthermore, "when a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law and summary judgment is

appropriate." *Sims v. Mulhearn Funeral Home, Inc.*, 07-0054, p. 10 (La. 5/22/07); 956 So.2d 583, 590.

The Prime Contract is expressly incorporated into the Subcontract at issue. (Rec. Doc. No. 10-2). The Subcontract at Part I, Section B.1 provides that:

> Payment will be made based on actual in-place yards of soils removed from Borrow Site. Cubic Yards will be measured by quantity survey taken before and after excavation of soils from the Borrow Site.

(Rec. Doc. No. 10-2). Additionally, the Prime Contract sets forth the method for conducting quantity surveys and calculating progress payments and overall payments based on the actual completed work as determined by the quantity surveys. Pursuant to Section 22 of the Prime Contract (Rec. Doc. No. 33-1), the Government shall conduct the original and final quantity surveys from which the work performed and actual construction completed will be determined. Specifically, Section 22 states:

> 52.236-16 QUANTITY SURVEYS (APR 1984)
>
> (a) Quantity surveys shall be conducted, and the data derived from these surveys shall be used in computing the quantities of work performed and the actual construction completed and in place.
>
> (b) The Government [Corps] shall conduct the original and final surveys and make the computations based on them. The Contractor shall conduct the surveys for any periods for which progress payments are requested and shall make the computations based on these surveys. All surveys conducted by the Contractor shall be conducted under the direction of a representative of the Contracting Officer, unless the Contracting Officer waives this requirement in a specific instance.

      (c)   Promptly upon completing a survey, the Contractor shall furnish the originals of all field notes and all other records relating to the survey or to the layout of the work to the Contracting Officer, who shall use them as necessary to determine the amount of progress payments. The Contractor shall retain copies of all such material furnished to the Contracting Officer.

(Rec. Doc. No. 33-1). The Subcontract does not address or define quantity surveys beyond that which is referenced in Part I, Section B.1. Accordingly, pursuant to Louisiana law these provisions must be interpreted in light of the other so that each is given the meaning suggested by the contract as a whole. It is clear and unambiguous that under a dual reading of these provisions, the obvious intent of the parties was to determine the final amount of work actually performed from the Government's original and final quantity surveys. The clear and explicit wording of the contract requires no further interpretation of parties' intent and makes the consideration of extrinsic evidence inappropriate. As such, it was the intent of the parties' under the contract to calculate the final and overall payments from the Government's original and final quantity surveys.

## II. Reconsideration of Defendant's Motion for Partial Summary Judgment

Plaintiff argues that the hearing date on Defendant's Motion for Partial Summary Judgment had been extended by agreement and counsel for both parties had discussed a joint and voluntary extension of all deadlines in the case due to outstanding discovery

9

on the part of both parties. (Rec. Doc. No. 45, Ex. "A"). Given the confusion between the parties, it is reasonable to grant Plaintiff's Motion for Reconsideration. However, Plaintiff's failure to file a motion to continue the hearing or file a motion for extension of time within which to oppose the motion was unjustified. As such, Defendant's costs and reasonable attorney's fees associated with the Plaintiff's motion for reconsideration are assessed against Plaintiff. *See* Fed. R. Civ. P. 16; Rec. Doc. No. 44.

**III. Defendant's Motion for Partial Summary Judgment**

  **A. Plaintiff's *Quantum Meruit* Claim**

  Louisiana courts "have found that *quantum meruit* as a substantive basis for recovery is viewed with disfavor in Louisiana." *United Disaster Response, L.L.C. v. Omni Pinnacle, L.L.C.*, 569 F.Supp.2d 646, 649 (E.D. La. 2008), *citing SMP Sales Mgmt., Inc. v. Fleet Credit Corp.*, 960 F.2d 557 (5th Cir. 1992); *Fogleman v. Cajun Bag & Supply Co.*, 638 So.2d 706, 707-08 (La. App. 3rd 1994). This Court in *United Disaster Response, L.L.C. v. Omni Pinnacle, L.L.C.* dismissed plaintiff's *quantum meruit* claim as it is not a cause of action recognized by Louisiana law. Additionally, plaintiff's argument that the Court should apply *quantum meruit* as a measure of compensation was rejected since there was "no finding of an implied contract or a contract where there was no price or no agreement as to compensation had been

reached." *Id.*

T&C argues that Louisiana courts have permitted the alternative plea of *quantum meruit* in suits based on breach of contract when such relief is pleaded in the alternative citing *B.F. Edrington Drilling Co. v. Yearwood*, 118 So.2d 419 (La. 1960) and *Marquette v. Hous. Auth. of Opelousas*, 137 So.2d 374 (La. App. 3 Cir. 1962). Rec. Doc. No. 45-2. These cases are distinguishable from the case *sub judice*. In *Yearwood*, the Court found that the plaintiff had breached the contract with the defendant and in such a case, could only recover on the theory of *quantum meruit* if such relief had been plead in the alternative. 118 So.2d at 422. *Marquette v. Hous. Auth. of Opelousas* is also distinguishable in that the contract at issue was found to be forbidden by law and thereby invalid thus allowing plaintiff to seek recovery under the alternatively pleaded theory of *quantum meruit*. 137 So.2d at 378.

In the instant case, it is uncontested that the parties entered into a subcontract whereby they agreed to a compensation structure for the work performed by Plaintiff. As a matter of law, since such an agreement existed, recovery by Plaintiff under a theory of *quantum meruit* is inappropriate.

**B.  Plaintiff's Unjust Enrichment Claim**

The theory of "unjust enrichment is firmly rooted in [Louisiana's] Civil Code and has well defined elements." *Fogleman*, 638 So.2d at 709. The five elements required for a showing of

unjust enrichment are: (1) there must be an enrichment, (2) there must be an impoverishment, (3) there must be a connection between the enrichment and the impoverishment, (4) there must be an absence of justification or cause for the enrichment and impoverishment, and (5) there must be no other remedy at law available to plaintiff. *Baker v. Maclay Properties Co.*, 94-1529 (La. 1/17/95); 648 So.2d 888, 897.

Plaintiff alleges that L&S failed to perform specific operations of stockpiling and drying the borrow material, and as a result thereof, caused T&C additional costs. Accordingly, Plaintiff argues that recovery for these alleged additional costs is warranted under an alternative theory of unjust enrichment. Plaintiff, however, has failed to present specific facts to warrant such recovery. Plaintiff's allegations are merely supported by conclusory statements and thus offer no justification as to why Defendant's motion should not be granted.[1] Additionally, Plaintiff's claim for unjust enrichment fails because there exists an independent remedy at law, that is, in contract.

**IV. Conclusion**

Based on the foregoing, **IT IS ORDERED** that Defendant's Motion for Summary Judgment (Rec. Doc. No. 20) is **GRANTED** with regards to

---

[1] Plaintiff references a referral letter (Rec. Doc. No. 24-8) written by L&S's Operation Manager, Mark Hallock, on behalf of T&C as the basis for the claim that a quantity of 400,000 cubic yards of soils were transported from the borrow site. Similarly, the affidavit of Plaintiff's construction expert, Robert Gregory (Rec. Doc. No. 24-4) contains a number of conclusory statements and offers no basis for the assertions made therein.

Defendant's claim of overpayment and **DENIED** as to Defendant's claim that Plaintiff's claims are time barred.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Reconsideration (Rec. Doc. No. 45) is **GRANTED** with costs and reasonable attorney's fees assessed against Plaintiff pursuant to this Court's Order of December 16, 2010 (*see* Rec. Doc. No. 44) and that Defendant's Motion for Partial Summary Judgment (Rec. Doc. No. 40) is **GRANTED.**

New Orleans, Louisiana, this 23rd day of March, 2011.

_____
United States District Judge