UNITED STATE DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

U.S. EX REL. T&C DIRTWORKS, INC.            CIVIL ACTION NO. 10-985

VERSUS                                       JUDGE LEMELLE

L&S-CKY JV and INSURANCE COMPANY            MAGISTRATE JUDGE KNOWLES
OF THE STATE OF PENNSYLVANIA

## ORDER AND REASONS

Before the Court are Defendants' Motion for Summary Judgment (Rec. Doc. No. 82) and Defendants/Plaintiffs in Counterclaim's Motion to Confirm the Amount of Overpayment (Rec. Doc. No. 83). For the following reasons, the Motion for Summary Judgment is **DENIED**, and the Motion to Confirm the Amount of Overpayment is **GRANTED**.

Defendant L&S-CKY JV ("L&S") entered into a subcontract with Plaintiff T&C Dirtworks, Inc. ("T&C") to haul soils from borrow pits to levee sites, in accordance with a prime contract between L&S and the Army Corps of Engineers ("Corps") for levee construction. The subcontract expressly incorporated all provisions of the prime contract. (Rec. Doc. No. 82.5, p.1). The parties completed the work required by the prime contract and subcontract, but dispute the duties owed, the volume of soil transported, and total payment owed under the contract.

In its remaining cause of action for breach of contract, Plaintiff T&C claims that the soil loaded onto its trucks for transportation was improperly processed, resulting in T&C having to haul extra loads to achieve the cubic yardage required to build the

1

levees. (Rec. Doc. No. 1, p. 3). Specifically, T&C claims that it had to transport soil with an unacceptably high moisture content, and that its trucks were underloaded. (Rec. Doc. No. 90, p. 3). Defendant L&S denies that it had any duty to control the moisture content of the excavated soil. (Rec. Doc. No. 82, p. 2).

Defendant L&S filed a counterclaim against T&C, arguing that it overpaid T&C for the volume of soil transported. This Court has already ruled that L&S did overpay T&C, and granted summary judgment in favor of L&S, requiring the parties to calculate the final and overall payments based on a stipulated price and the Government's quantity surveys. (Rec. Doc. No. 56, p. 9).

*1.   Motion for Summary Judgment*

Defendant L&S contends that Plaintiff T&C's breach of contract claim turns on the interpretation of the sub- and prime contracts, and thus is a purely legal issue. L&S argues that the contracts at issue imposed no duty on it to control the moisture content of the soil to be delivered to the levee sites.

Plaintiff T&C asserts that the prime contract requires L&S to process the excavated soil at the borrow site before having it transported to the levee site. T&C argues that issues of material fact--including the actual moisture content of the soil, whether the soil was properly processed, and whether the soil went to compacted or uncompacted fill--regarding its claim that L&S breached the subcontract.

2

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(C); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas,* 139 F.3d 532, 536 (5th Cir. 1998).

Interpretation of a contract is a legal issue that may be decided on summary judgment. *Boudreaux v. Unionmutual Stock Life Ins. Co. Of America*, 835 F.2d 121, 123 (5th Cir. 1988); *Merritt-Campbell, Inc. V. RxP Products, Inc.*, 164 F.3d 957, 961 (5th Cir. 1999). Defendant L&S contends that the subcontract does not require it to process the soil or, in any other way, control its moisture content. However, when the subcontract is construed in context with the prime contract, the terms of which are expressly incorporated into the subcontract (Subcontract, Rec. Doc. No. 82-5, p. 1,5), it becomes clear that L&S did have a duty to process the soil to control its moisture content.

The prime contract contemplates, in several provisions, the moisture content of the soil to be transported from the borrow areas, requiring that the borrow areas be drained and kept dry during excavation (Excerpts of Prime Contract, Rec. Doc. No. 82-4, p. 3); that L&S provide a plan for stockpiling material before it is transported to the project site and for keeping the borrow area dry during excavation (*Id*. at 4); that L&S establish and maintain quality control to assure compliance with contract requirements, including moisture control (*Id*. at 12); and that L&S perform control testing, including testing for moisture content (*Id*. at 13, 14). Moreover, the prime contract expressly requires L&S to control the moisture content of the compacted fill to be used as embankment material, although it imposes no moisture control requirements for uncompacted fill. (*Id*. at 17). The subcontract requires T&C to deliver soils to the levee site in accordance with plans and specifications (Rec. Doc. 82-5, p. 4, 5), and notes that the obligations under the subcontract are the same as those imposed on under the prime contract (*Id*. at 5).

It is thus established that the subcontract, through the prime contract, required Defendant L&S to control the moisture content of at least the soil intended for compact embankment fill. The analysis of Defendant's motion for summary judgment must then turn to whether L&S fulfilled this duty. L&S argues that Plaintiff T&C has not set forth evidence to prove that T&C breached a duty to

process the soil. Although it does not dispute that it did not stockpile or otherwise process the soil, L&S argues that there is no evidence that the soil contained too much moisture or that the moisture requirements applied to any of the soil.

The evidence set forth by T&C, including the report and affidavit of its expert engineer, R.E. Gregory (Rec. Doc. Nos. 93, 94), shows that the soil samples contained excess moisture. Moreover, although L&S argues that there is no evidence that the soil at issue was intended for compacted fill, and thus no evidence that L&S was required to control the soil's moisture content, Gregory's report and affidavit conclude that at least some of the soil must have been used as compacted fill. (*Id*.) Indeed, the prime contract defines uncompacted fill as "any embankment material being placed in the wet below elevation 1.50 NAVD88;" conversely, any material being placed above the wet elevation must be compacted. (Rec. Doc. 82-4, p. 19). It can thus be inferred that at least some of the soil used to build the levees, which rise above a wet elevation, must have been compacted fill.

Plaintiff T&C meets the minimum standard of demonstrating issues of material fact. Summary judgment is thus not appropriate at this time.

2.  ***Motion to Confirm the Amount of the Overpayment Made to T&C Dirtworks, Inc.***

L&S seeks confirmation of the amount of its overpayment to T&C. It argues that the final calculation is ripe under this

Court's March 28, 2011, order (Rec. Doc. No. 56) that the figure be calculated from the Corp's quantity surveys and a stipulated price of $6.50 per cubic yard.

T&C contends that final calculation of overpayment is premature, until T&C's damages against L&S for breach of contract are calculated. T&C argues further that the overpayment calculation should not be based on the Corps' quantity surveys. In a supplemental opposition, T&C suggests that, based on an email produced in discovery, the proper basis for calculation is the quantity survey of L&S.

In its March 28, 2011 Order and Reasons (Rec. Doc. No. 56), this Court found that "It is clear and unambiguous that under a dual reading of [the contract] provisions, the obvious intent of the parties was to determine the final amount of work actually performed from the Government's original and final quantity surveys. The clear and explicit wording of the contract requires no further interpretation of parties' intent and makes the consideration of extrinsic evidence inappropriate. As such, it was the intent of the parties under the contract to calculate the final and overall payments from the Government's original and final quantity surveys." (*Id*. at 9). Because the contract is unambiguous on this point, the Court need not consider extrinsic evidence of the parties' intent. *Preston Law Firm, L.L.C. v. Mariner Health Care Management Co.*, 622 F.3d 384, 392 (5th Cir. 2010).

The disposition of T&C's breach of contract claim does not have any effect on the calculation of the amount payable under the contract: the calculation is simply the amount due per cubic yard times the number of cubic yards transported. The parties have stipulated to a contract price of $6.50 per cubic yard, and need only to establish the quantity of soil transported, as reported by the Corps surveys.

The Corps surveys show that T&C transported 285,782 cubic yards of soil from the borrow site. At $6.50 per cubic yard, the total owed to T&C was $1,857,583.00. L&S actually paid to T&C $1,967,660.50. The result is an overpayment of $110,077.50. This ruling does not prejudice Plaintiff's right to seek relief for other breach of contract damages, e.g., delay, extended overhead, etc.

New Orleans, Louisiana, this 4th day of October, 2011.

_____
UNITED STATES DISTRICT JUDGE